# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| TRAILHEAD CAPITAL, LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. 11 CV 07028 |
| vs. ) | |
| ) | Magistrate Judge Jeffrey T. Gilbert |
| DHL EXPRESS (USA), INC., ) | |
| ) | |
| Defendant. ) | |

### REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS COUNTS II AND III OF PLAINTIFF'S AMENDED COMPLAINT

In its response brief, Trailhead Capital, LLC ("Trailhead") does not challenge the fact that its tort claims are not cognizable under Florida law. Instead, Trailhead primarily challenges the choice of law analysis DHL Express (USA), Inc. ("DHL") advanced in its initial brief. Trailhead's position, however, relies on inapposite authorities. The cases that Trailhead cites in its Response brief do not have any application to an Illinois court sitting in diversity considering tort claims that are closely related to the parties' written agreement. Using the proper choice of law rules, Plaintiff's tort claims are governed by Florida law, which does not permit a claim for conversion based on the failure to tender money due under a contract and does not recognize spoliation as an independent tort. In the unlikely event this Court finds that Illinois governs the tort claims at issue, DHL's Motion to Dismiss should still be granted. Illinois law does not permit tort claims that are duplicative of breach of contract claims.

Accordingly, Counts II and III of Trailhead's Amended Complaint should be dismissed with prejudice.

**ARGUMENT**

A.  **Florida Law Governs Plaintiff's Claims.**

Plaintiff's Response to Defendant's Motion to Dismiss Counts II and III of Plaintiff's Amended Complaint ("Response" or "Response Brief") begins with a proper recitation of the rule that "federal courts sitting in diversity apply the choice-of-law rules of the forum state to determine the applicable substantive law." *See Hinc v. Lime-O-Sol Co.,* 382 F.3d 716, 719 (7th Cir. 2004). Unfortunately, Trailhead's Response Brief goes awry right after it begins. Instead of applying the "contract dependence" test that Illinois courts routinely apply to tort claims that may be dependent on a contractual relationship, Trailhead makes three specious arguments to support its conclusion that Illinois law applies to its tort claims. None of Trailhead's arguments have any merit.

1.  **The Most Significant Relationship Test Does Not Apply**

Trailhead's primary argument is that the choice of law analysis should begin and end with the "most significant relationship test" set forth in Restatement (Second) Conflicts of Laws § 145. (Resp. at 2-5.) Trailhead is incorrect.

Trailhead's assertion about the role of the most significant relationship test is largely premised on its belief that *Cerabio LLC v. Wright Med. Tech. Inc.*, 410 F. 3d 981 (7th Cir. 2005) and *Kuehn v. Children's Hosp., Los Angeles*, 119 F.3d 1296 (7th Cir. 1997) are "controlling precedent." (Resp. at 6). The *Cerabio* and *Kuehn* decisions, however, are appeals from the Western District of Wisconsin, where, of course, federal courts sitting in diversity are obligated to apply Wisconsin choice of law rules. In the *Cerabio* decision, the Seventh Circuit affirmed Judge Shabaz's use of "Wisconsin's choice of law algorithm" that resulted in the application of Wisconsin law. *Cerabio*, 410 F. 3d at 987. Similarly, in the *Kuehn* decision, Judge Posner had to sort through "the fact that Wisconsin uses a laundry-list approach to conflicts questions" to

2

resolve a pain and suffering claim on appeal from the Western District of Wisconsin. *Kuehn*, 119 F. 3d at 1300. These Wisconsin cases applying Wisconsin choice of law principles have no application to an Illinois court that must apply the choice of law principles of Illinois. *See Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487 (1941).

There is no question that the most significant relationship test is a time-honored principle of decision in Illinois courts. This test, however, is not the starting point for a choice of law analysis in a case where the parties have a contractual relationship. *Compare* Restatement (Second) Conflicts of Laws §§ 145 & 187. As demonstrated by at least ten decisions from the Northern District of Illinois, Illinois courts do not apply the most significant relationship test in place of the parties' contractual choice of law when the claims at issue are found to be dependent on the parties' contract. *Heiman v. Bank of Am., N.A.*, No. 11-C-4285, 2011 U.S. Dist. Lexis 135025, *5 (N.D. Ill. Nov. 21, 2011) ("In Illinois, tort claims that are dependent upon the contract are subject to a contract's choice of law provision.") (attached as Ex. 1); *Sears, Roebuck & Co. v. Tyco Fire Prods. LP*, No. 08-CV-2838, 2010 U.S. Dist. Lexis 84744, *7-*8 (N.D. Ill. Aug. 17, 2010) ("Tort claims that are dependent upon the contract are subject to a contract's choice-of-law clause regardless of the breadth of the clause") (attached as Ex. 2); *Acosta v. Target Corp.*, 728 F. Supp. 2d 968, 976 (N.D. Ill. 2010) ("[R]egardless of the breadth of the choice of law provision, tort claims that are dependent upon the contract are subject to a contract's choice of law provisions."); *Am. Repertory Film v. Blue Bear Prods.*, No. 08-C-6034, 2010 U.S. Dist. Lexis 42640, *9 (N.D. Ill. Apr. 29, 2010) ("There is authority, however, that supports applying the law specified in a choice-of-law provision where (as here) the 'tort claim is dependent upon the contract.'") (attached as Ex. 3); *Facility Wizard Software, Inc. v. Southeastern Tech. Svcs., LLC*, 647 F. Supp. 2d 938, 943 (N.D. Ill. 2009) ("Even if the parties'

intent was unclear, the court finds that [plaintiff's] tort claims are dependent on the Dealer Agreement"); *LaSalle Bank Nat'l Assoc. v. Paramount Props., LLC*, 588 F. Supp. 2d 840, 850-51 (N.D. Ill. 2008) ("Because Defendants' negligence claims is dependent on the Note, the Note's choice of law clause applies"); *Interclaim Holdings Ltd. v. Ness, Motley, Loadholt, Richardson & Poole*, 298 F. Supp. 2d 746, 762 (N.D. Ill. 2004) (holding that tort claims that were dependent on the parties' Retainer Agreement were governed by the choice of law provision in that Agreement); *Wireless Distribs., Inc. v. Sprintcom, Inc.*, No. 03-C-2405, 2003 U.S. Dist. Lexis 16568, *6 (N.D. Ill. Sept. 18, 2003) (determining that the parties' choice of law provision should be applied to fraud claims that were dependent on the parties' agreement) (attached as Ex. 4); *Birnberg v. Milk St. Residential Assocs. Ltd. P'ship*, No. 02-C-0978, 2003 U.S. Dist. Lexis 806, *42 (N.D. Ill. Jan. 17, 2003) ("Tort claims that are dependent upon the contract are subject to [the] contract's choice-of-law clause[,] regardless of the breadth of the clause.") (attached as Ex. 5); *Medline Indus., Inc. v. Maersk Med. Ltd.*, 230 F. Supp. 2d 857, 862 (N.D. Ill. 2002) ("[T]ort claims that are dependent upon the contract are subject to a contract's choice-of-law clause regardless of the breadth of the clause.")

The decision in *Birnberg,* 2003 U.S. Dist. Lexis 806, provides useful guidance as to the proper framework for choice of law decisions involving tort claims related to a contractual relationship. As demonstrated in that decision, Illinois courts use a multi-step process for determining choice of law questions in a dispute where the parties have stipulated in a contract as to the applicable law. In the first step, "the court should examine the language of the contract's choice-of-law clause to determine if the parties 'intended [it] to govern all claims between them.'" *Id.* at *40 (Ex. 5). Sometimes, it is clear at this step that the parties intended to apply the choice-of-law provision to "all disputes" and the choice of law analysis is complete.

4

Other times, the contract has a narrower ambit and states something similar to Section 22 of the Agreement between DHL and Trailhead: "This Agreement shall be governed by and construed in accordance with the laws of the State of Florida." (*See* Ex. A to Dkt. 22 at 13). Further analysis is required when this type of provision exists because it does not specify that it governs for "all disputes." The further analysis applied, however, is not the generic most significant relationship test from the Restatement Section 145 that generally applies to tort claims. Instead, Illinois courts apply the "contract dependence" test in step two of the analysis to determine whether to apply the parties' chosen law to the tort claims at issue. *See Birnberg*, 2003 U.S. Dist. Lexis 806 at *42 (Ex. 5).

In determining whether a tort claim is dependent upon the contract, courts examine whether: (1) "the [claim] alleges a wrong based upon interpretation and construction of the contract," (2) the "tort claims [are] closely related to the parties' contractual relationship," and (3) the tort claim "could exist without" the contractual agreement which contains the choice of law provision. *See id.* In this case, Plaintiff's claim for conversion and spoliation allege unlawful conduct based upon and closely related to the parties' Agreement because they are expressly premised on contractual duties. The conversion claim directly alleges a failure to remit funds that DHL had a duty to remit under the Agreement. (*See* Am. Compl. ¶¶ 29 - 31.) Similarly, there can be no question about the tight relationship between the spoliation claim and the contract. Trailhead's Response Brief says that "the duty to preserve evidence arises, in part, from the Agreement between Trailhead and DHL." (Resp. at 12.) This admits the parties' contract is central to the spoliation claim. Trailhead uses the phrase "in part," but in fact the sole claimed source for any legal duty that is supported by factual allegations is the alleged contractual duty "to transmit to Trailhead a monthly list of all direct payments it received on the

5

Charged-Off Accounts." (*Id.*) And, of course, the failure to provide a monthly list identifying direct payments received by DHL is the core of Trailhead's breach of contract claim. (*See* Am. Compl. ¶ 26.) Thus, there is no question that Trailhead's "tort" claims are dependent upon and could not exist without the Agreement, and Trailhead really does not contend otherwise.

Trailhead's sole contention regarding the contract dependence test is that it cannot be reconciled with the "controlling precedent" in *Cerabio* and *Kuehn*. (Resp. at 6.) This position should not be accorded any weight for the reasons previously discussed. The parties' decision to apply Florida law should be honored and applied to the tort claims asserted against DHL. Trailhead never says that Florida has no connection to this dispute. Florida is a rational choice because DHL has its principal place of business and corporate headquarters in Plantation, Florida. (Am. Compl. ¶ 6; *see also* Ex. A to Dkt. 22 at 9 (noting that notices under the Agreement need to be sent to DHL's legal and procurement departments in Plantation, Florida).

Using this framework, there is no need for courts to reach and apply the most significant relationship test. Only when neither the parties' intent nor the contract dependence test is met does the court apply the "most significant relationship test." *See Birnberg,* 2003 U.S. Dist. Lexis 806 at *45 (applying contractual choice of law provision to dependent claims and the most significant relationship test to claims that were found not to be dependent on the parties' contract) (Ex. 5); *Medline Indus.,* 230 F. Supp. 2d at 862 (applying the most significant relationship test to tortious interference claims after deciding such a claim is independent of the parties' agreement). Trailhead is absolutely correct that courts apply the most significant relationship test to tort claims. This is the standard approach in cases involving strangers. *See Safeco Ins. Co. v. Jelen*, 886 N.E.2d 555, 583 (Ill. App. Ct. 2008) (cited in Resp. at 2) (applying Restatement § 145 where, "but for the [car] accident, the plaintiff and defendant "would have no

6

relationship."); *FMC Corp. v. Capital Cities/ABC, Inc.*, 915 F. 2d 300 (7th Cir. 1990) (cited in Resp. at 2-3) (applying the most significant relationship test to a conversion claim brought by a defense contractor against a television station that allegedly possessed the defense contractor's documents as a result of a reporter's investigative story about the contractor). But, courts do not apply the most significant relationship test unless and until they have determined that the contract dependence test does not require application of the substantive law chosen by the parties in their contract. *See, e.g., Precision Screen Mach. Inc. v. Elexon, Inc.*, No. 95-C-1730, 1996 U.S. Dist. Lexis 12487, *8 (N.D. Ill. Aug. 26, 1996) (refusing to apply a contractual choice of law provision and applying the most significant relationship test to misappropriation of trade secret and breach of a confidential relationship claims that were found to be independent of the parties' contract) (attached as Ex. 6).

  **2.  The Parties' Agreement as to the Governing Law Should Be Enforced**

  Trailhead's second argument about choice of law is no better than its first. Trailhead's second argument is that the parties did not intend to apply Florida law to tort claims. (Resp. at 4-5.) As support, Trailhead observes that the choice of law provision in the Agreement is not an "all disputes" type of provision. (Resp. at 4.) As previously discussed, however, Illinois courts regularly find similarly phrased choice of law provisions to govern tort claims where the tort claims relate to, arise from, and are inextricably bound to, the parties' contract. *See, e.g., Facility Wizard Software, Inc. v. Southeastern Tech. Svcs., LLC*, 647 F. Supp. 2d 938, 943 (N.D. Ill. 2009) (applying the parties choice of law provision to misappropriation of trade secrets claims where the claims were "closely related" to the parties contractual relationship); *LaSalle Bank Nat'l Assoc. v. Paramount Props., LLC*, 588 F. Supp. 2d 840, 850-51 (N.D. Ill. 2008) (applying the parties choice of law provision to tort claims where the tort claims were dependent on the parties' contract); *Miyano Machinery USA, Inc. v. Zonar,* No. 92-C-2385, 1994 U.S. Dist.

7

Lexis 6772, *9 (N.D. Ill. May 23, 1994) (applying a narrow choice of law provision to a claim for bad faith denial of a contract where such a claim was found to be "inextricably tied to contractual issues.") (attached as Ex. 7); *Midwest Enters., Inc. v. Generac Corp.,* No. 91-C-2229, 1991 U.S. Dist. Lexis 12016, *6 (N.D. Ill. Aug. 27, 1991) (applying the parties' narrow choice of law provision to unjust enrichment claims that were "closely related" to the parties' contractual relationship) (attached as Ex. 8).

    Not all cases that involve contractual choice of law provisions with modest breadth and tort claims, however, involve dependent tort claims. As previously stated, the court in *Birnberg* applied contractual choice of law provisions of modest breadth to dependent claims and the most significant relationship test to independent tort claims. *See Birnberg*, 2003 U.S. Dist. Lexis 806 at *45 (Ex. 5). In *Dunkin' Donuts, Inc. v. N.A.S.T., Inc.*, 266 F. Supp. 2d 826, 831 (N.D. Ill. 2003) (cited in Resp. at 2, 4-5) and *Midland Mgmt. Corp v. Computer Consoles, Inc.*, No. 87-C-0971, 1992 WL 281354, *2 (N.D. Ill. 1992) (cited in Resp. at 4, attached as Ex. A to Resp.), the court applied the most significant relationship test to evaluate tort claims that the court did not find to be dependent. There is nothing wrong with applying the most significant relationship test to tort claims under the right circumstances. Some cases may be close. This one is not.

    Unlike cases where the parties have no pre-existing relationship, the expectations of DHL and Trailhead can readily be determined by reviewing the Agreement. There is no doubt that the parties fully expected Florida law to govern their rights and duties relating to the possession of funds tendered by the account debtors. Similarly, Trailhead and DHL fully expected their rights and duties relating to the provision of data and information required under the agreement to be governed by Florida law. It would be consistent with the parties' expectations to apply Florida law to Plaintiff's claims. "Under Illinois law that goes back to the 1850's, a contractual choice

8

of law provision should be given effect 'where it is not dangerous, inconvenient, immoral nor contrary to the public policy of the local government.'" *Janice Doty Unlimited, Inc. v. Stoecker*, 697 F. Supp. 1016, 1019 (N.D. Ill. 1988) (quoting *McAllister v. Smith*, 17 Ill. 328, 334 (1856)). "Generally, the law applicable to a contract is that which the parties intended, assuming such an intent. When that intent is expressed, it should be followed." *Hofeld v. Nationwide Life Insurance Co.*, 59 Ill. 2d 522, 529 (1975) (applying contractual choice of law provision to a misrepresentation claim that was related to the parties' contract).

As stated in DHL's Memorandum in Support, the parties' preference for Florida law is outcome determinative. Florida law does not recognize a conversion claim for money due under a contract. *See Gasparini v. Pordomingo*, 972 So. 2d 1053, 1055-56 (Fla. Dist. Ct. App. 2008). Florida also does not recognize an independent tort for spoliation. *Martino v. Wal-Mart Stores, Inc.* 908 So. 2d 342, 347 (Fla. 2005). Trailhead does not contend otherwise.[1] Therefore, Counts II and III should be dismissed with prejudice.

### 3. Application of Florida Law Would Not Violate a Fundamental Policy of the State of Illinois

Trailhead's third argument is that the parties' choice of law clause is unenforceable because application of Florida law would violate a fundamental policy of the State of Illinois, which Trailhead contends has "the greatest interest in" its tort claims. (Resp. at 7.) This argument has no merit.

---

[1] Trailhead's sole effort to refute the substantive impact of applying Florida law is found in footnote 4 on page 12 of the Response Brief. Although Trailhead does not dispute that, under Florida law, conversion is not available for a claim for money due under a contract, Trailhead disputes that the economic loss doctrine would bar any claim for conversion because it is an intentional tort. (*See* Resp. at 12 n.4, citing *Curd v. Mosaic Fertilizer, LLC*, 39 So. 3d 1216 (Fla. 2010)). No Florida court, however, has held as much. The court in *Curd* merely mentioned in *dicta* that an earlier decision from the Florida Supreme Court, *Indem. Ins. Co. v. Am. Aviation, Inc.,* 891 So. 2d 532 (Fla. 2004), indicated the economic loss doctrine may not bar intentional torts that are independent of the contract. Such a decision has no application to this action, where the tort claims are completely dependent on the parties' Agreement.

### a. No Fundamental Policy of Illinois Is Even Implicated in this Case

Illinois courts have recognized that the fact that state laws may differ is insufficient to constitute a violation of fundamental public policy. *See Mackowiak v. Harris Graphics Corp.*, No. 89-C-962, 1989 U.S. Dist. Lexis 12100, *8 (N.D. Ill. Oct. 3, 1989) (attached as Ex. 9), citing *Champagnie v. W.E. O'Neil Constr. Co.*, 395 N.E.2d 990, 992 (Ill. App. Ct. 1979). Under the public policy doctrine, a court "should not refuse to apply the law of a foreign State, however unlike its own, unless it is contrary to pure morals or abstract justice, or unless the enforcement would be of evil example and harmful to its own people." *See Potomac Leasing Co. v. Chuck's Pub, Inc.*, 509 N.E.2d 751, 754 (Ill. App. Ct. 1987); *Champagnie*, 395 N.E.2d at 992. Contrary to Trailhead's assertion, no court has overruled *Potomac* or any other leading case on the scope of the public policy doctrine. Even if Illinois law dictates a different outcome on a particular question than the law designated by the parties' contract, that different outcome does not equate to a finding that the other state's law is "so odious that a court will not respect the parties' election to be governed by it." *See Vencor v. Webb*, 33 F.3d 840 (7th Cir. 1994) (applying Illinois law); *Labor Ready, Inc. v. Williams Staffing, LLC*, 149 F. Supp. 2d 398, 407 (N.D. Ill. 2001).

Trailhead has not demonstrated how application of Florida law would violate the pure morals or abstract justice of Illinois or harm the people of Illinois. If Trailhead's allegations are proven at trial, the Illinois-resident Trailhead will be entitled to a remedy under Florida contract law for the same conduct that is at issue for its tort claims. This is merely a breach of contract case. This case does not involve fundamental policies related to employment and the enforcement of restrictive covenants like the decision in *Brown and Brown, Inc. v. Mudron*, 887 N.E.2d 437 (Ill. App. Ct. 2008), on which Trailhead places so much emphasis. (*See* Resp. at 6-

10

7.) In any event, as discussed below in Section b, application of Illinois law would not even result in a materially different outcome.

### b. Trailhead Has Not Demonstrated that Illinois Has a Materially Greater Interest in Trailhead's Tort Claims

Trailhead has not shown that Illinois has a materially greater interest than Florida in Trailhead's tort claims. Florida has an significant stake in this action. Florida is DHL's principal place of business. As shown in the Agreement's notice section, the legal and procurement department for DHL is located in Florida. The Agreement was preceded by an RFP issued from the procurement department in Florida and the Agreement was negotiated from Florida. Some witnesses and documents are located in Florida. Other witnesses and documents and even members of Trailhead Capital, LLC are located in states other than Illinois, such as Georgia and Texas. Under these circumstances, it is not clear that Illinois has a materially greater interest in Trailhead's tort claims. See *M.T. McBrian, Inc. v. Liebert Corp.*, 38 Fed. R. Serv. 3d 1294 (N.D. Ill. 1996) (finding that Ohio, the state designated by contract, had a materially greater interest than Illinois where the contract was executed in Ohio and performed in Ohio, and Illinois was merely the state where one party was a citizen) (attached as Ex. 10).

## B. Even if Illinois Law Applied, Trailhead's Claims Are Not Viable

### 1. Under Illinois Law, Trailhead Does Not Have a Viable Conversion Claim

In the unlikely event the court determines that Illinois law applies, Trailhead's conversion claim is still deficient as a matter of law. Under Illinois law, courts routinely dismiss tort claims that are indistinguishable from a breach of contract claim. *See, e.g., McCammon-Chase v. Circle Family Care, Inc.*, No. 09-C-7450, 2010 U.S. Dist. Lexis 74435, *18-*19 (N.D. Ill. 2010) (dismissing plaintiff's conversion claim because it was "nothing more than a breach of contract claim") (attached as Ex. 11). As the Seventh Circuit has noted, "parties cannot use tort

principles to circumvent the terms of an agreement." *See Cerabio LLC v. Wright Medical Technology, Inc.*, 510 F.3d 981, 985 (7th Cir. 2005) (cited by Trailhead at Resp. 4-6.); *see also Am. United Logistics, Inc. v. Catellus Dev. Corp.*, 319 F.3d 921, 926 (7th Cir. 2003) ("contract law provides the proper remedy for disappointed commercial expectations"). In *Essex Insurance Company v. Lutz*, the Southern District of Illinois held that a conversion claim was not cognizable under Illinois law where the plaintiff failed to allege that defendant owed a duty "completely independent of the one arising under the contract." *Essex Ins. Co. v. Lutz*, No. 06-CV-0114, 2007 U.S. Dist. Lexis 20228, *17 (S.D. Ill. Mar. 20, 2007) (attached as Ex. 12). *See also Bethlehem Steel Corp. v. Chicago E. Corp.,* 863 F.2d 508, 523 (7th Cir. 1988) ("When only economic loss is incurred, the plaintiff may only raise contract theories even if the defendant's allege conduct constituted a tort as well as a breach of contract."). In this case, the alleged conduct supporting the conversion claim is the same as for the breach of contract claim. Both claims allege a failure to tender funds DHL received from third parties to Trailhead. (*See* Am. Compl. ¶¶ 26, 31.) Thus, even if Illinois law applied to Trailhead's conversion claim, Trailhead's claim would not be viable.

    **2.    Under Illinois Law, Trailhead Does Not Have a Viable Spoliation Claim**

Trailhead's Response Brief makes it clear that the sole source of DHL's alleged duty to preserve evidence is the Agreement. Specifically, Trailhead states that the evidence that was allegedly spoliated, "a monthly list of all direct payments it received on the Charged-off Accounts" is "expressly required" under the Agreement. (Resp. at 12.) Thus, Trailhead has made it clear that the contractual provision requiring DHL to generate this monthly list is also the source of the duty to preserve this "evidence." Thus the spoliation claim and the conversion claim are "simple contract claims disguised in tort claim clothing." *Cerabio,* 510 F.3d at 993.

The Seventh Circuit does not permit such duplicative claims. *Id.* (dismissing a claim that would be proven through the same evidence as the breach of contract claim).

Moreover, no Illinois court has ever expressly endorsed first party spoliation claims such as the one advanced by Trailhead. The case that Trailhead relies upon exclusively to support its contention that Illinois law permits spoliation claims, *Boyd v. Travelers Ins. Co.*, 166 Ill. 2d 188 (Ill. 1995), involved only a third party spoliation claim. That is, the claim in *Boyd* was made against a stranger that took possession of evidence the plaintiff needed to recover against a product manufacturer. When the stranger lost the evidence, the Illinois Supreme Court held the plaintiff could bring a spoliation claim against the stranger that allegedly interfered with the plaintiff's ability to recover against the product manufacturer.

No reported Illinois decision, however, expressly authorizes spoliation claims against first party spoliators. In many ways, such a claim is duplicative of a breach of contract claim, and thus would be barred by the cases discussed in the preceding section that prohibit duplicative claims. *See, e.g., Bethlehem Steel,* 863 F.2d at 523. The parties to a contract have already allocated the economic risks of nonperformance through the bargaining process. If a party to a contract attempted to circumvent the contractual agreement by making a claim for economic loss in tort through a spoliation claim, that party is essentially seeking to obtain a better bargain than originally made. When parties are in privity, contract principles are generally more appropriate for determining remedies for consequential damages that the parties have, or could have, addressed through their contractual agreement. *See Am. United Logistics*, 319 F.3d at 926. Moreover, the harm at the core of a first party spoliation claim is something that can be addressed through remedies other than an affirmative claim, such as adverse inference jury instructions.

Under these circumstances, there is no reason to believe the Illinois Supreme Court would expand the scope of the *Boyd* decision and approve spoliation claims against first party spoliators. State courts that have thoughtfully assessed the distinction between first party and third party spoliation claims have determined they are not identical. *See, e.g., Martino v. Wal-Mart Stores, Inc.*, 908 So. 2d 342, 347 (Fla. 2005) (holding that an independent claim for spoliation does not exist where the alleged spoliator and the defendant in the underlying action were the same, in part because there are alternative remedies for the plaintiff for such conduct); *Gribben v. Wal-Mart Stores, Inc.*, 824 N.E.2d 349, 355 (Ind. 2005) (rejecting a claim for spoliation against the defendant where the defendant was alleged to have lost or destroyed evidence that may have been helpful in establishing the defendant's liability). Without more guidance from the Illinois Supreme Court, it would be imprudent to approve an expansion of the tort of spoliation under Illinois law.

## CONCLUSION

For the foregoing reasons, DHL respectfully requests that this Court dismiss Counts II and III of the Amended Complaint with prejudice and grant such other and further relief as the Court deems just.

Dated: February 15, 2012                    Respectfully submitted,

                                                DHL Express (USA), Inc.

                                                By: /s/Matthew T. Furton
                                                     One of Its Attorneys

                                                Matthew T. Furton
                                                Helen Din
                                                LOCKE LORD LLP
                                                111 South Wacker Drive
                                                Suite 4500
                                                Chicago, Illinois 60606
                                                312.443.0445
                                                mfurton@lockelord.com

                                                Michael H. Collins (*pro hac vice*)
                                                LOCKE LORD LLP
                                                2200 Ross Avenue
                                                Suite 2200
                                                Dallas, Texas 75201
                                                214.740.8526
                                                mcollins@lockelord.com

## CERTIFICATE OF SERVICE

I certify that on February 15, 2012, I electronically filed the foregoing **Reply Memorandum of Law in Support of Defendant's Motion to Dismiss Counts II and III of Plaintiff's Amended Complaint** with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to the following attorneys of record:

>Anthony C. Valiulis, avaliulis@muchshelist.com
>Marissa L. Downs, mdowns@muchshelist.com
>MUCH SHELIST DENENBERG AMENT & RUBENSTEIN, P.C.
>191 N. Wacker Drive, Suite 1800
>Chicago, Illinois 60606
>*Attorneys for Plaintiff*

>By: /s/Matthew T. Furton
>One of the Attorneys for Defendant